UNITED STATES BANKRUPTCY COURT                     <u>FOR PUBLICATION</u>
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------
In re

    Elnora Bellamy                                   Case No. 12-10897 K

                          Debtor
------------------------------------------------------------------
Maguire Brothers, LLC d/b/a Enviro-Care
Disaster Restoration Services

                         Plaintiff

            -vs-                                   AP No. 12-1030 K

Elnora Bellamy
                         Defendant
------------------------------------------------------------------

Christopher R. Poole, Esq.
Rebecca E. Monte, Esq.
Katy M. Hedges, Esq.
Chelus, Herdzik, Speyer, Monte & Paja
438 Main Street, Suite 2000
Buffalo, NY   14020

Attorneys for Plaintiff

David P. Feldman, Esq.
Phillip Dabney, Jr., Esq.
69 Delaware Avenue, Suite 711\
Buffalo, NY   14202

Attorneys for Defendant


OPINION AND ORDER

      This is a Chapter 7 case.  These are cross-motions for summary judgment in a

dischargeability case under 11 U.S.C. § 523 (a)(6) - - "wilful and malicious injury" to the person

or property of another.

The Debtor suffered massive fire damage to her home in 2009. She hired the Plaintiff for certain clean-up and remediation services. She received insurance proceeds of $129,708.42, but according to the Plaintiff, she did not fully pay the Plaintiff what it was owed from those proceeds. She argues that she paid for what she thought was due and owing to the Plaintiff - - $27,693.33.[1] The Plaintiff alleges that the Debtor "converted" insurance proceeds of $30,317.60. It has filed a mechanic's lien in that amount. Further, it still holds the furniture that was removed for cleaning, and continues to assess storage charges.

DISCUSSION

For there to be "conversion" of money under 11 U.S.C. § 523(a)(6), a plaintiff first must demonstrate that it has a possessory right or property interest in the money.[2] *McKee v. Gratz*, 260 U.S. 127 (1992); *In re 604 Columbus Ave. Realty Trust*, 968 F.2d 1332, 1358 (7th Cir. 1992); *Orchid Constr. Corp. v. Gonzalez*, 932 N.Y.S. 2d 125 (App. Div. 2d Dept. 2011). No such right or interest was granted by the Defendant here in anything that she signed. Consequently the Plaintiff relies on N.Y. Lien Law § 4-a and § 70.

Those statutes clearly have no application here. One need look no further than the very case that the Plaintiff cites in its own favor - - *Valsen Construction Corp. v. Long Island Racquet and Health Club,* 645 N.Y.S. 2d 317 (App. Div. 2nd Dept. 1996). That court pointed

---

[1] $ 96,560.00 went to another contractor to restore the house. No proceeds were used by the Debtor for any purpose other than protection of her family and re-building her home.

[2] The second element (which need not be reached here) is to establish that the defendant had knowledge of the property interest, or was chargeable with such knowledge, when she "converted" the property.

out that those statutes establish "that the proceeds of an insurance policy shall become trust assets where there is 'destruction or removal by fire or other casualty <u>of an improvement on which lienors have performed labor or services.</u>'"

In other words, the work that the contractor performed had to have been performed <u>before</u> the casualty, not <u>after</u>. <u>Before</u> a casualty, a contractor is protected by the ability to lien the real estate. <u>After</u> a casualty, the diminished value of the property might leave the contractor's lien without sufficient value to protect the contractor. Thus, the contractor is given a lien on insurance proceeds (N.Y. Lien Law § 4-a) and the insured must hold the insurance proceeds in trust for the contractor (N.Y. Lien Law § 70.)

The *Valsen* Court cogently and concisely stated the reason that that plaintiff (and the present Plaintiff) is not protected by those statutes. It said, "[T]he plaintiff was not a lienor at the time that the casualty occurred to the property. Consequently, the substitute *res*, insurance proceeds, need not be held in trust to protect the interests of [those who performed the] work that was destroyed."

For the same reason that that court rejected the trust claim against that defendant, this Court rejects any lien claim (N.Y. Lien Law § 4-a) or breach-of-trust claim (N.Y. Lien Law § 70) as to the insurance proceeds received by this Defendant.

It being so held, the Plaintiff is left only with a claim that the Debtor "fraudulently" used the insurance proceeds for purposes other than to pay the Plaintiff. In other words, she chose not to pay although she had the ability to pay. Totally apart from the fact that a decision to

breach a contract despite an ability to perform is not "fraud,"[3] this Complaint was pled in 11 U.S.C. § 523(a)(6), not § 523(a)(2).  (If premised in § 523(a)(2) it would be necessary for the Plaintiff to establish that the Debtor did not intend to pay the Plaintiff at the time that she signed the agreement for the work - - so-called "promissory fraud."  That would be impossible here where the Plaintiff solicited the Debtor (not the other way around) and even caused her to waive the 3-day rescission right as to door-to-door solicitations.)

This Complaint is so baseless in law that it is "shocking to the conscience of the Court."  Rule 11 is implicated, and the Court now exercises its *sua sponte* authority under that Rule.  The Plaintiff or its counsel shall show cause on **December 19, 2012 at 10:00 a.m.**, why a sanction should not be imposed equal to the Debtor's cost of defense, including her attorneys' fees.

But for the U.S. Supreme Court's decision in *Stern v. Marshall,* 131 S. Ct. 2594 (2011), the Court also would invite the Debtor to amend her Answer to include counterclaims to replevy her furniture and to address the mechanic's lien.  That case, however, casts doubt on this Court's jurisdiction to decide state-law counterclaims where resolution of such counterclaims is not necessary to this Court's adjudication of a "core" bankruptcy matter. (In *Stern v. Marshall* the "core" matter was an objection to Mr. Marshall's Proof of Claim, and the Debtor's counterclaim against Mr. Marshall (asserted by Trustee Stern) was found by the High Court to have been insufficiently related to that "core" matter to fall within the bankruptcy court's

---

[3]It is merely a dischargeable breach of contract, for which contract damages lie.

jurisdictional limits.)  Here, the "core" matter is dischargeability of the debt.  That matter is now resolved in the Debtor's favor.  The matter of the lawful amount of the Plaintiff's <u>contract</u> claim against the Debtor cannot come before this Court unless this is (or becomes) an "asset case" and the Plaintiff files a Proof of Claim.  In that event, this Court will have "core" jurisdiction to fix the amount owed by the Debtor (and, hence, the proper size of the mechanic's lien).

For now, any remedies that the <u>Debtor</u> might have against the <u>Plaintiff</u> (such as double or treble damages for filing a false or inflated mechanic's lien, and for replevin of the furniture) are garden-variety state-law causes of action that are not related to any remaining "core" function of this Court in this Chapter 7 case.  (Obviously, if this were a Chapter 13 case the size of the Plaintiff's secured claim would be a "core" matter.)

## <u>DICTUM</u>

As noted above, a decision to breach a contract that one fully intended to perform is, by definition, "breach of contract" not "fraud."  The consequence of such breach is that the defaulting party is liable in contract damages.  Contract damages, however, are dischargeable in bankruptcy.[4]  The Court, consequently, has rejected the Plaintiff's argument to the contrary (and also noted that § 523(a)(2) was not pled by the Plaintiff).  The Court also has rejected the § 523(a)(6) argument because the Plaintiff had no property interest in the insurance proceeds.

---

[4] Compare 11 U.S.C. § 523(a)(1)(C) making some tax debts non-dischargeable regardless of age, if the Debtor "wilfully attempted in any manner to evade or defeat such tax."  The Court is aware that in some cases the Internal Revenue Service has argued that having the financial means to pay a tax obligation and choosing not to pay it constitutes "wilful evasion" of said tax.  Note that 11 U.S.C. § 523(a)(2) does not render wilful evasion of a <u>contract</u> debt non-dischargeable.

Having so ruled, the following constitutes dictum that is based solely on the affidavits and exhibits provided in these cross motions for summary judgment. (There has been no evidentiary hearing or trial.)

The Court offers this dictum for two reasons. First, there remains a mechanic's lien in an amount in excess of $30,000 against the Debtor's home, and, as explained above, this Court cannot assist her in assessing its validity because this is a dischargeability action, and not an action to quantify the amount of the Debtor's contract liability to the Plaintiff, if any. Second, it appears to the Court (again, based solely on the submissions) that there is a possibility that the Debtor has been defrauded by the Plaintiff. The submissions have left this Court with a strong impression that may be of use to a state court in addressing the mechanic's lien and to the Consumer Frauds Division of the Office of the Attorney General of the State of New York, if the Debtor chooses to visit that office.

Four days after the fire the Plaintiff approached the Debtor on an unsolicited basis, persuaded her to sign a "work authorization" that contained no dollar amount and no specification of specific work to be performed, and which, by its terms, constituted her waiver of the three-day statutory rescission opportunity that New York permits with regard to contracts signed as a result of a door to door solicitation.

From the time the contract was signed in April until some time in early or mid-November she received no billing statements, invoices, or written status reports. But during that period, the Plaintiff had utilized the "direct pay authorization" contained in the "work authorization" to seek payment directly from her insurance company. The insurance company

made two checks payable only to the Plaintiff, at the Plaintiff's address, totaling over $27,000. The Debtor attests that she personally delivered those checks to the Plaintiff, and so the Court concludes that either those checks were hand-delivered to her by her insurance agent or were sent to her in the mail for delivery to the Plaintiff. There is no dispute about the fact that she was totally aware of those direct payments being made by her insurance company to the Plaintiff. The Court concludes that at least as of the first day of November in 2009, the Debtor was justifiably of the belief, as she attests, that "I paid them everything I thought I owed them."

Then, sometime in mid-November she received both a Statement and an estimate from the Plaintiff (copy attached hereto). Apparently in the same mailing. The Statement is at least opaque, if not strange. It is not in chronological order. It seems to be keyed more to the way the Plaintiff does its bookkeeping than to any means of effective communication to the homeowner. The Statement was one page, and the estimate contained six pages. There was no explanation or detail provided as to the charges on the statement. Rather, there were only abbreviations for the words "cleaning" and "repair." That Statement was dated November 1, 2009, and asserted a balance owing of $30,317.60.

That amount is comprised of two charges: a $6,448.53 charge dated August 24, 2009, for "structure repair mechanical" and a $23,869.07 charge, dated June 29, 2009, but appearing as the last item on the statement. (It follows the entry for the August 24 charge.) Earlier items on the statement included two other charges for June 29, 2009, both of which were paid by the Debtor's insurance company. The Plaintiff has offered no explanation as to why this $23,869.07 charge appears as the last item on the Statement; why, if the charge was incurred on

June 29, the Plaintiff did not claim directly against the Debtor's insurance company as it did with regard to other charges incurred on that date; or what, exactly, the $23,869.07 charged consisted of (the Statement simply says "structure cleaning").

There are several possible explanations. One is that upon the October 30 receipt of the check from the insurance company, the Plaintiff realized that it had "forgotten" to bill the Debtor (or her insurance company) for over $23,000 worth of work done on June 29. Another possibility is that the Plaintiff did bill the Debtor's insurance company, but upon receipt of the October 30 check realized that that portion of its claim had been rejected by the insurance company. A third possibility is that the charge is entirely bogus - - it has never been explained by the Plaintiff, no detail has been provided by the Plaintiff, and no evidence that the Plaintiff expended any labor, costs or materials costs on that date in excess of the June 29 work that was fully compensated from the Debtor's insurance.

CONCLUSION

To summarize the above holdings, this dischargeability complaint is dismissed as a matter of law. Rule 11 is implicated, and the Plaintiff and/or counsel shall show cause on **December 19, 2012 at 10:00 a.m.**, why the Plaintiff should not be sanctioned in the amount of the Debtor's costs of defense including attorney's fees. It is outside the jurisdiction of this Court to address the amount of contract damages owed by the Debtor to the Plaintiff unless or until this bankruptcy case becomes an "asset case" in which the Plaintiff files a proof of claim. Consequently, the Debtor may wish to attack the mechanic's lien in a state court of appropriate

jurisdiction.  Further, the Debtor may wish to consult the Consumer Frauds Division of the New York State Attorney General's Office if she believes of unfair dealing by the Plaintiff.

SO ORDERED.

Dated:      Buffalo, New York
            December 7, 2012

                                                    s/Michael J. Kaplan
                                                    _____
                                                    U.S.B.J.

Case 1-12-01030-MJK    Doc 34    Filed 12/07/12    Entered 12/07/12 15:43:26    Desc Main
                          Document      Page 9 of 9